These following Rules and/or Articles were violated by the Mineral wells Police Department and was not included for my defense by either Prosecuting Attorney or Appellic Attorney. Chapter 8:45 "Promise That is positive"
Chapter 8:46 Statements induced By promises - Texas voluntariness standard and promises - made by or sanctioned by person in authority. Chapter 8:47 Statements induced by promises - Texas voluntariness standard and promises - influences Suspect to confess untruthfully (This is my situation)
Evidence is in State Exhibits.

Chapter 8:48 Statements induced by deception
Chapter 8:49 Statements induced by deception - Due process
and Deception

Chapter 8:61 Warnings Required

Article 38.22 When statement may be used

Article 15.17 Arrest under warrant

Ex Parte Ybarra 629 sw 2d 943 (Tex Crim App 1985)
ineffective assistance of counsel
Attorney was ineffective for investigating the defendants
case and failing to present evidence of the behalf of
Defendant
Ex Parte Bartfield 697 sw. 2d 420 (Tex Clim App 1985)
Article 15.17 Arrest under warrant - Duties of arresting
insufficient evidence
Officer and Magistrate
Miranda Rights not given during time of arrest or by magistra
at time of Bond setting                    These violations can be fun
Art 38.22 when statement can be used in the West's Texas Statue and
codes 2014 Edition

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

RECEIVED
IN COURT OF APPEALS
ELEVENTH DISTRICT

MAR 16 2015

SHERRY WILLIAMSON, CLE
11-14-00112-CR
TC# 15154

Article 38.21 statement
Page 237

A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion under the Rules here after Prescribed.

Detective Jeremy Hamscher - " If you tell me what you did I will tell the D.A. this was an accident "

me - (Defendant/Accused) "If I did it" I can see myself cutting him with my fingernails while I was changing his diaper.

This statement was made after stated violations compulsion and/or Persuasion.

also the findings of the psychological evaluation as Performed by Dr. Kanton a Psychologist were not Presented at Court. the Courts used my mental unstableness to prosecute me " Based on the severity of this case and the fact that it's not an isolated incident ( no physical evidence Statement was made under direct violations of Texas Codes Criminal Procedures) and his explosive Personality disorder (Bi-Polar) that he admits he has ( Profound Psychological Problems for many years) ( was in a vulnerable mental State immediately before alleged offense occured) and his that he does have tendencies towards anger and violence

the State Believes that it's in the Best interest of the Community that he Be sentenced to the institutional Division of TSCJ

Article 8:61 Warnings Required - Law enforcement must give a suspect the following 4 admonishments Before any words or actions constituting an "interrogation" can Begin

#3) he/she has the right to consult with a lawyer and have the lawyer with

1. He or she has the right to remain silent

2. anything he or she says can and will be used against him/her during interrogation in court

4. if he/she is indigent a lawyer will be appointed to Represent him/her

Miranda V Arizona 384 U.S. 436, 468 to 472 86 S Ct. 1602 1625 to 1626 (1966) if any of the first 3 parts of the warnings are not provided a Resulting confession must be excluded simpey because they were not provided.

I may not have been in custody at the time of my interrogation but as the evidence (video interrogation) there 4 admonishments including the required first 3 parts were not instructed 2 no M. Jeremy Hunsaker of the mineral Wells Police Department did not advise me of these rights. he simpey waved his hand towards the door then walked out to got him something to drink (water) I feel that my "confession" ("Yet I did it") should be dismissed and all criminal punishments, Be dismissed. at no time either before my arrest →

At the time of my arrest before and after my transport to mineral wells Police Department was I informed of my Rights (miranda) also at the time of my Bond setting was I read my miranda rights I advised my legal Representative Richard Ritchie of this matter I was simpley informed by him that they didn't have to. While it clearly states under Texas laws and Codes that before any interrogation can Begin and also arrest under warrant that my miranda Rights were to be Read to me.

The stated violations of texas codes and Rules are stated as written in the West's Texas Procedures code and Rules these Rules are Recieved through August 1, 2013 these codes are as amended through the 2013 Regular and called sessions of the 83rd legislature

(Pause in proceedings.)

THE COURT:  Anything further, Ms. Massey?

MS. MASSEY:  Not from the State, Your Honor.

THE COURT:  Anything further, Mr. Ritchie?

MR. RITCHIE:  None from the Defense, Your Honor.

THE COURT:  I'm slightly perplexed about why this occurred.  I mean, a person of average intelligence or even diminished intelligence should know better than to do this.  And there's an indication in Exhibit 2 that you always did that.  So it was not an isolated incident.

Ms. Massey, do you have any closing arguments you'd like to make?

MS. MASSEY:  Yes, Your Honor.

Based on the severity of this case, the fact that it's not an isolated incident, and his explosive personality disorder that he admits that he has, that he does have tendencies towards anger and violence, the State believes that it's in the best interest of the community that he be sentenced to the Institutional Division of TDCJ.

But if the Court chooses not to do that, we would ask that he be at least required to do an anger

Being convicted due to mental illness

CAUSE NO. 15154

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | NOV 14 2013 |
| vs. | § | 29TH JUDICIAL DISTRICT |
| | § | JANIE GLOVER, DISTRICT CLERK |
| | § | PALO PINTO COUNTY TEXAS |
| JOHNNY EUGENE DAVIS, SR. | § | BY _____ DEPUTY |
| | § | PALO PINTO COUNTY, TEXAS |

## DEFENDANT'S *EX PARTE* MOTION FOR EXPERT
## AND INVESTIGATIVE ASSISTANCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the indigent Defendant, JOHNNY EUGENE DAVIS, SR., by counsel, and pursuant to Tex. Code Crim. Proc. arts. 26.05(a) and (d), Art. 46B.003 and .005, the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article I, Sections 10, 13 & 19 of the Texas Constitution and other authority cited herein, moves this Court to enter a finding that there is a reasonable necessity for expert assistance and funding in support of Defendant's right to defend against the charge of Injury to a child with intent to injure brought by the State of Texas. In support thereof, this Defendant would show:

I.

(a) Defendant has been charged with the felony offense of Injury Child/Elderly/Disable W/Int Bodily Injury. As will be specifically set out herein, the accused's mental health, prior to and at the time of the alleged offense, will be a significant factor at trial and is relevant to issues that must be decided by the jury.

(b) Expert assistance will be necessary to prepare and present this evidence in Defendant's defense. The assistance of the requested expert will help to satisfy the need for reliability in the trial process that is required by the 8th and 14th Amendments to the United States Constitution and the United States Supreme Court (see *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)), and under the Texas Constitution.

(c) This Court has determined the Defendant is indigent. His counsel is unable to retain any expert assistance due to his client's indigent status.

II.

(a) The funding that is requested will provide Counsel with an essential tool to defend against the charges brought by the State of Texas. Defendant is entitled to such expert assistance upon a threshold showing that the assistance sought is relevant to a significant factor at trial.

DAVIS: Defendant's Motion for Expert & Investigative Assistance; P. 1

# Mineral Wells Police Department

## SUICIDE PREVENTION SCREENING GUIDELINES

Detainee's Name:  Davis, Johnny Eugene                          Case #:  1300012973

Booking Officer:  Bilski, Christen                              Date/Time:  09/23/2013 14:58

Suicide risk or psych problems during prior incarceration?  YES  NO  N/A

Please check appropriate column for each question

| | | TRUE | FALSE | COMMENTS |
|---|---|---|---|---|
| 1 | Arresting or transporting officer believes that detainee may be suicidal | ☒ | | |
| 2 | Detainee lacks close family or friends in the community. | | ☒ | |
| 3 | Detainee has experienced a significant loss within the last six months. (Loss of job, relationship, death of family member ....) | | ☒ | |
| 4 | Detainee is very worried about major problems other than legal situations (Financial, family, medical condition, fear of losing job, etc.) | | ☒ | |
| 5 | Detainee's family member or significant other (spouse, parent, close friend, lover) has attempted or committed suicide. | ☒ | | wife |
| 6 | Detainee has psychiatric history. (Note current medications and most recent treatment agency.) | ☒ | | |
| 7 | Detainee has history of alcohol abuse | ☒ | | |
| 8 | Detainee holds position of respect in the community (professional, public official, etc.) and/or alleged crime is shocking in nature | | ☒ | |
| 9 | Detainee is thinking about killing himself. | ☒ | | |
| 10 | Detainee has previous suicide attempt. (Check wrists and not method) | ☒ | | cut wrist |
| 11 | Detainee feels that there is nothing to look forward to in the future. (Expresses feelings of helplessness or hopelessness.) | ☒ | | |
| 12 | Detainee shows signs of depression. (Crying, emotional flatness.) | ☒ | | |
| 13 | Detainee appears overly anxious, afraid or angry | ☒ | | |
| 14 | Detainee appears to feel unusually embarrassed or ashamed. | | ☐ | |
| 15 | Detainee is acting and/or speaking in a strange manner (Cannot focus attention, hearing or seeing things that aren't there) | | ☒ | |
| 16 | A. Detainee is apparently under the influence of alcohol or drugs. * | | ☒ | |
| | B. If true, is detainee incoherent or showing signs of withdrawal or mental illness? | | ☒ | |
| 17 | 17.- No prior arrests. | ☒ | | |

If total checks in the "TRUE" column are EIGHT or more, or any of the boxes with an asterisk
(*) are checked, suicide prevention measures must be taken.  SUICIDE RISK?  YES  NO

# MINERAL WELLS POLICE DEPARTMENT

## Supplement

Date of report: 09/17/2013                                    Case Number: 1300012562-1

Incident Number :1300012562

Supplemented by:Hamscher, Jeremy

Date of Supplement: 09/20/2013 12:17

### 09/19/2013

I video interviewed Johnny Davis Jr's parents (Darline Davis and Johnny Davis Sr). Johnny Sr confessed to causing the injury on Johnny Jr's penis. Darline stated Johnny Sr never told her he caused the injury. The interview was non custodial and Johnny Sr left after the interview was finished.

### 09/23/2013  *AFTER VIOLATION UF FALSE PROMISE Act*

I obtained Warrant #F01134 (Injury To A Child) for Johnny Eugene Davis from Judge Bobby Hart. I gave a copy of this report, a copy of the warrant, and a copy of the complaint to Mineral Wells Police Department Dispatcher Christina Martinez to be entered into TCIC.

He was arrested by Mineral Wells PD Officer Christen Bilski this day for the warrant.

### 09/24/2013

Darline signed a Cook Children's medical records release form for me to obtain Johnny Davis Jr's medical records. I faxed the request to Amy Semrak at the Cook CARE Team.

### 09/25/2013

Amy Semrak provided me Johnny Davis Jr's medical records. Amy is the office manager for Cook Children's CARE Team. The report reads, "There is a purple bruise to the left of the penis shaft that is approximately 0.5cm x 1.5cm. There is also bruising and abrasions noted to the left side of the penile shaft itself. Purple bruising noted on the ventral surface of the penis. Impression: Bruises and abrasions to the penis inconsistent with the history given, most likely inflicted trauma." That was only a summary of the report. See the report for details. The medical records are filed with this case.

I interviewed Stephanie Giles at Head Start. Stephanie is Johnny Davis Jr's teacher.

---

Officer: Hamscher, Jeremy                          Approving Supervisor: Not approved

# MINERAL WELLS POLICE DEPARTMENT

## Narrative

Date of report: 09/17/2013

Case Number: 1300012562

---

Incident Number :1300012562

On 9/17/2013 I officer Richard Harris received a call from Jeremy Henard of Child Protective Services. Mr. henard advised that Johnny Daiv jr. a three year old child had a suspicious bruise on his penis and that Jr. was being evaluated by a Cooks Childrens Hospital Physcian and that he would call back with the physcians findings.

Mr. Henard called back and advised that according to the physcian who examined Jr. that the bruise on Jr's penis was caused by either a being pulled possible even Jr. being lifted by his penis or possible from a kick to the childs scrotum.

EUIDENCE DOES NOT SHOW THAT
I ALONE CAUSED THIS INJURY
ALSO NO EUIDENCE(physICAL) OF PRIOR HISTORY OF
SAME INJURY.

Officer: Harris, Richard

Approving Supervisor: Boetz, Brian

# MINERAL WELLS POLICE DEPARTMENT

## Supplement

Date of report: 09/17/2013                    Case Number: 1300012562-2

Darline denied injuring her son or knowing who did. After speaking to her for a while she stated she believed Johnny Sr would have to be the person who injured him. She told me there was nobody at the residence, other than herself and Johnny Sr.

End of interview. This is not a transcript of the interview. Please review video for details. At this time, there is no evidence to show that Darline was involved in injuring their son (Johnny Jr).

### Stephanie Ann Giles interview

On 09/25/2013, I spoke with Stephanie Ann Giles (white/female, 02/13/1975 TX DL #19013349) at 701 Garrett Morris Pkwy, Head Start, Mineral Wells, TX 76067. Stephanie is Johnny Jr's teacher. The interview was audio recorded. The interview is filed with this case.

She told me this is Johnny's first year at Head Start. He started on 08/26/2013. She stated she notice the injury to his penis on 09/03/2013 (Tuesday) when she was changing his diaper. Monday was Labor Day, so the school was closed. She knew the injury was not normal. She said the shaft and of his penis was bruised a red and purple color. She immediately contacted her director and family social worker. She then contacted CPS to file a report.

She told me that morning when she took the diaper from his bag to change him there were cock roaches that crawled out. She stated they had to send him home that day because of head lice also. He returned to school on 09/09/2013.

She stated she changed his diaper on 08/30/2013 (Friday) and there were no visible injuries.

She stated Johnny Davis Sr, came to pick him up that day. She said Darline stayed in the car. He told her he got the injury from a fall. Darline had told the school on the phone he got the injury from a fall.

Stephanie gave me a copy of the their family contact sheet she filled out on 09/03/2013. It said that Johnny told her he has been treating the injury with Neosporin since Saturday morning. The contact sheet is filed with this case.

End of interview.

Officer: Hamscher, Jeremy                    Approving Supervisor: Not approved

*I DIDNOT GET TO VIEW EITHER OF THESE VIDEOS DUE TO POOR WIFE CONNECTION AT JAIL*

# MINERAL WELLS POLICE DEPARTMENT

*Due to NOT VIEWING These VIDEOS*

## Supplement

Date of report: 09/17/2013                    Case Number: 1300012562-2

*I WAS NOT ALLOWED TO PROPERLY DEFEND MYSELF AT TRIAL*

Incident Number :1300012562

Supplemented by:Hamscher, Jeremy

*YOU CAN ASK PERSON WHO LAPTOP COMPUTER BELONGED TO*

Date of Supplement: 09/23/2013 10:46

*AS TO NOT ABLE TO VIEW VIDEO*

### Johnny Eugene Davis Sr video interview

On 09/19/2013, I video interviewed Johnny Eugene Davis Sr (white/male, 11/02/1969, SSN: 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) at the Mineral Wells Police Department interview room. The interview was non custodial. Johnny Sr came to speak with me voluntarily. Before the interview began, I advised him he was free to leave at any time. He understood. The video is filed with this case.

Johnny knew that he was there to speak about his son's (Johnny Eugene Davis Jr (white/male, 09/25/2009) injuries. I spoke with Johnny about who all was at the house during the time frame the injury happened. He stated the only people at his house were him and Darlina Runa Davis (white/female, 08/04/1966, TX DL #08562549). Darlina is his wife and Johnny Jr's mother.

I spoke to him about the injury not being caused from a fall. I advised him the injury was a result of a person causing the bruising and laceration/cut. Throughout the interview he denied causing the injuries to his son, but did not know who would have done that. Towards the end of the interview, he confessed to being the person that injured his son. He stated the injury happened while he was trying to put a diaper on him. He stated Johnny Jr was moving around a lot and would not be still enough to get the diaper underneath him. Johnny Sr stated he grabbed him by his penis and lifted him up only by his penis to get the diaper underneath him. He stated he cut the base of Johnny Jr's penis with his fingernail. He showed me that his fingernails needed to be cut. He told me he always lifts him up by his penis. He agreed with me that he pulled/jerked his son's penis too hard causing the injury.

End of interview. This is not a transcript of the interview. Please review video for details.

### Darline Runa Davis video interview

On 09/19/2013, I video interviewed Darline Runa Davis at the Mineral Wells Police Department interview room. The interview was non custodial. Darline came to speak with me voluntarily. Before the interview began, I advised her she was free to leave at any time. He understood. The video is filed with this case.

Officer: Hamscher, Jeremy                    Approving Supervisor: Not approved

*VIOLATION OF FALSE PROMISE ACT*

*IF YOU TELL ME WHAT YOU DID I WILL TELL THE DA THIS WAS AN ACCIDENT*

guilty of the offense alleged in the indictment in this case, sir.

THE DEFENDANT: If it would make you -- if it could speed it up, could I speak, please?

THE COURT: What?

THE DEFENDANT: Could I please speak to the Court, please?

THE COURT: I'll give you just a second.

THE DEFENDANT: Sorry.

THE COURT: No. I want you to go ahead and speak to the Court now before I assess punishment.

THE DEFENDANT: Okay. In 2007 or 2008, I was -- I went to MHMR with my -- me and last wife was getting a divorce. I was still -- I had the explosive temperament disorder and depression, and that was it. He just, you know, let me go.

And then I went -- just started recently going back to and getting -- through MHMR in Weatherford, I was talked to -- I was mentioned that word to -- "explosive" to my counselor, and she said bipolar.

And I had an appointment, I think, for October 2nd or October 4th, I was supposed to go back to MHMR, and I was going to request to be put on medication for it.

would -- I would think that this Court could just make it an order of the Court for him not to be around, until further order, and let him amend his conditions of probation through a lawyer, if the Court felt comfortable about that. And certainly, anger management and those kind of things.

But I don't think Johnny is a threat to society. I think he's genuinely concerned about the damage that he did to the marriage and still wants to get back with her, but I don't -- I don't believe he is a -- I don't think the evidence shows that this is a violent predator like that.

I think it was a total lapse of judgment to even attempt to change a diaper that way. I mean, I think that's -- that's true.

THE COURT: Well, I mean, the pictures are very serious to me. I mean they depict very serious injuries.

MR. RITCHIE: Yes, sir.

THE COURT: Almost shocking of the conscience really is the way I see it. And I just -- that's why I say, I just don't understand how a human being can do that to their own son. That's really troubling to me.

MS. MASSEY: Your Honor, actually, his

caseworker is here in the gallery today, and she's advising that it is open simply for the fact that he has been in jail pending this outcome. But the child's been reunified, and services have been worked by the mother.

*(Pause in proceedings.)*

THE COURT: Mr. Davis, could you stand, please.

THE DEFENDANT: (Complies.)

THE COURT: All right, Mr. Davis. You've come before the Court today, and you entered a plea of guilty to the offense alleged in the indictment in this case.

You were duly admonished by the Court about the consequences of that plea. You've asked the Court to consider to give you -- to put you on probation, but I told you, prior to accepting your plea, that you were not going to be allowed to withdraw that even if I rejected what you were asking me to do.

I found that your plea was knowingly, intelligently, freely, and voluntarily given, and I accepted that plea of guilty. And you -- there's been evidence presented, which goes to the effect of punishment or sentence or what to do with you in this case.

So, first of all, I'm going to find you

EVIDENCE DOES NOT SHOW WITHOUT ANY DOUBT THAT I ALONE CAUSED THIS FROM JUR. BEING CONVICTED BECAUSE OF MENTAL ILLNESS NOT GUILT

42

because he dirtied his diaper or because he wasn't being still --

THE COURT: Okay.

MS. MASSEY: -- and did this out of anger.

THE COURT: Okay.

All right, Mr. Ritchie.

MR. RITCHIE: My take on the actual incident is -- give me a second to articulate what I really think about what the evidence shows, Judge, is that when you first look at it in a vacuum, it's -- you think, well, who would do that conduct?

But then you go, how can a three-year-old having a diaper changed and wiggling around and doing certain things? I mean, it's just -- you go, wow, how can that happen?

I think you get into inadvertence; I think you get to recklessness, which is also part of that statute. And, you know, there's a lesser included going down. That's a state jail felony offense. But -- and I don't think that's what the Court is asking about.

But I don't -- to me, this evidence is that Johnny did not do it a numerous number of times or probably the same result would have happened because of the fingernails or whatever. But I think it was a -- it happened spur of the minute. The child's wiggling

management class and not be near his wife or child, if that's what they ask, and it's my understanding they have asked, for at least two years.

THE COURT: Well, let me just ask you that. I mean, that's -- can that be imposed -- you're saying that can be imposed as a term and condition of probation?

MS. MASSEY: It can be a condition of probation that he not be near his wife and child for as long as the Court deems proper.

THE COURT: But that would not be enforceable like a protective order would be, though.

MS. MASSEY: No. It would be a violation of probation if he did that.

THE COURT: All right.

MS. MASSEY: This would just be extra protection for the family.

THE COURT: Right. Okay.

All right. Can you speak to the mindset of this offense, though, that I was alluding to? Why would this occur? I mean, based upon -- what's your position in that regard?

MS. MASSEY: Based on the evidence, the only conclusion that I can come up with is that he was angry with the child for whatever reason, whether it was

around, going around, maybe not behaving.

And so, Judge, it is what it is. I think your perception is the same as everybody else's. But I think the practicalities of this happening in the -- in the near future are just -- I mean, I don't think there's any threat to society about Johnny going around changing diapers on kids, okay, number one.

I mean, it's -- the kid is bound to be old enough, since he's going to be five, where the same kind of conduct wouldn't occur. Maybe other conduct would occur. I mean, that's always a concern for us. But that conduct can't -- surely wouldn't.

I don't know -- I honestly don't know where the CPS case is in this system. I'm assuming -- and the Court may know -- if it's in this court, then it certainly would be supervised visitation, and he wouldn't have the opportunity to be around the kid, kind of like a protective order, without supervision. And I don't know that.

THE COURT: I don't know -- I don't know the answer. I have so many of them I can't --

MR. RITCHIE: I understand, Judge. And I -- but I would -- we both know -- CPS is in it somewhere, I believe.

And as a condition of probation, I

Q.   Okay.  Certainly depression and anxiety over the years; is that right?

A.   Yes, sir.

Q.   And you've off and on taken medicine for that for a long period of time; is that right?

A.   Yes, sir.

Q.   Sometimes you get it -- get the medicine correctly; sometimes you don't, right?

A.   Yes, sir.

Q.   Today, as we're sitting here, since you've been in custody, there's nothing that the jail has given you that causes you not to understand what we're doing today, though, is it?

A.   No, sir.

Q.   You totally understand, and you understand what I'm talking about, what the Court's talking about, and nothing about medication is keeping you -- hindering you in any way of communicating --

A.   No, sir.

Q.   -- is that right?

A.   Yes.

Q.   Okay.  Do you know what your IQ level has been established at?   *MENTAL COMPENTENCE NOT ESTABLISHED*

A.   No, sir.

Q.   We're going to get to the night -- or the

*IQ level Never mentioned Before our Adkins court*

A. No, sir.

Q. Did you graduate from Springtown?

A. Yes, sir.

Q. And that's high school, correct?

A. Yes, sir.

Q. Do you have any other education at all besides that?

A. No, sir.

Q. And you've got some physical disabilities; is that right?

A. Yes, sir.

Q. Can you name some of those?

A. I've got a partially fused -- partially fused left hip, and I've got the beginning stages of degenerative disc disease in my back.

Q. Okay. You walk with a pretty noticeable limp; is that correct?

A. Yes, sir.

Q. You're in pain a lot; is that right?

A. Yes, sir.

Q. Okay. And have you been diagnosed with things going on in -- mentally?

A. Yes, sir.

Q. Bipolar?

A. Bipolar, yes, sir.

system, or is it even in the system yet, or do you know?

A. It should -- Investigator Henard -- yes, it should be in the system. I don't know the status of their case, though.

MR. RITCHIE: I pass the witness.

REDIRECT EXAMINATION

BY MS. MASSEY:

Q. Just clear up one little thing.

When Mr. Davis went and picked up the child from Head Start, did he tell them what happened?

A. He told them -- he told them a story of what happened.

Q. Okay. And what did he tell them?

A. He told them about the fall. *HEARSAY*

Q. And when you interviewed him, did he immediately tell you what had occurred?

A. No, he did not.

Q. And did he tell you the story of him falling also?

A. I believe in the beginning of it, he did. We did speak about that. *WATCH VIDEO THIS STATE-*

Q. But he did eventually tell you what happened?

A. In the end, yes, he did.

MS. MASSEY: No further questions.

MR. RITCHIE: I have no further questions.

don't immediately call law enforcement, correct?

A. That's correct.

Q. There was -- was there ever any doubt in your mind that there was nothing -- no sexual conduct or indecency or anything of that going on in this entire case?

A. No. I didn't believe there was any sexual conduct going on.

Q. And from your investigation, was there ever any allegations against Johnny of being dependent on pot, meth, alcohol, any of that stuff?

A. Not that I recall.

Q. His problem was -- he was getting treated at various times for depression-type medications and those kind of things? If you know.

A. No. I'm not -- I don't recall any type of medication.

Q. But in your investigation, though, you weren't going: Oh, my gosh, this guy was on methamphetamine or drunk or something and doing that. That just didn't come to your attention at all --

A. No.

Q. -- is that fair?

A. No. That is fair.

Q. Are you aware of where the CPS case is in the

STATEMENT FROM WITNESS Stephanie Giles HAVE Been Designed to create the perception THAT I WAS Responsible for my son's injury without ANY FACTUAL BASIS unwarranted Deduction AND hearsay

Q.   Okay.  Isn't it fair to say, based upon all of your interview and all of your investigation, that the parents didn't attempt to hide this injury from the school system or Head Start?  Right?

A.   They did send him to school --

Q.   I'll give you that.

A.   -- so...

Q.   I mean, the kid returned to school.  Head Start gets -- I mean, gets upset when they have to change a three-year -- the kid's diaper, and they find it, and they're kind of shocked, right?

A.   Yes, they were.

Q.   I understand.

As a matter of fact, Johnny, the defendant, came to get the kid from school that very Tuesday, I believe; is that accurate?

A.   After the -- yes, after they found the injury.

Q.   After they found it, he came.

A.   He did come.

Q.   And then some days later, he comes in to interview with you when you call him, right?

A.   Yes, he did.

Q.   Okay.  And both parents are treating this child with Neosporin, and they don't call law enforcement. I'm talking about Johnny or Darlene or anybody.  They

happened sometime before that, correct?

A. Yes.

Q. All right. And I notice on there that there's no serious bodily injury. As a matter of fact, the child was back in school, I believe, on the following Monday after Labor Day, right?

A. I believe that's when he went back, yes.

Q. The child missed about a week of school; is that correct?

A. Yes.

Q. And so -- and so if the injury happened on Saturday of Labor Day weekend, I believe the parents were treating the laceration with Neosporin.

A. Yes, that's what they said.

Q. Is that basically right?

A. (Nods head affirmatively.)

Q. In fact, I think that's what Stephanie Giles said when you interviewed her, right?

A. Yes, that's correct.

Q. And the child is -- certainly, the child has recovered now, correct?

A. I believe so.

Q. Right. It's not serious bodily injury, in your opinion, is it?

A. No, it's not.

IN INTERRUGATION IT IS STATED THAT I WAS ALONE WITH VICTIM ON FRIDAY NOT STAY

correct?

A. That is correct.

Q. So coming up in September this year, he'd be five?

A. Yes.

Q. All right. And you interviewed -- and I think that injury was on the Saturday prior to Labor Day.

Does that sound correct?

A. Yes, that is correct.

Q. All right. And as you stated, I mean, everybody -- that -- all of the reports indicate that it was sometime on a Saturday evening, and Johnny was in charge. Is that your understanding of the changing diapers, taking care of the kid?

A. Yes, that is my understanding.

Q. And they call him J.D.; is that correct?

A. Yes.

Q. And all of these interviews were voluntary; they came in, correct?

A. It was voluntary.

Q. All right. And you actually interviewed him, I believe, on the 9th of September maybe -- no. 19th. I'm sorry.

A. Yes, the 19th.

Q. The 19th of September. But the actual event

VIOLATION OF EX-PARTE YBARRA
629 SW 2d 943 (Tex CRIM APP. 1982)
INEFFECTIVE USE OF COUNSEL ATTORNEY WAS
INEFFECTIVE DURING THE INVESTIGATION MY CASE

diaper on and kissed him and went on.

Q. And based on your investigation, who caused the injuries to the victim?

A. Johnny Davis, Sr.

MS. MASSEY: I'll pass the witness.

CROSS-EXAMINATION

BY MR. RITCHIE:

Q. Jeremy, as you know, I represent the defendant. I'm Richard Ritchie. And you and I have never talked about this case before today, have we?

A. No, we have not.

Q. And you -- actually, you interviewed Darlene Davis, which is Johnny's wife; is that correct?

A. Yes.

Q. And let's establish the age of that child backwards in there about September. I think his date of birth was '09 --

A. Okay.

Q. -- in September, so he would have been about three?

A. Uh-huh. That's correct.

Q. Three years -- I believe four. I believe he would have been four.

A. He had just turned.

Q. Just turning four about that time; is that

# Mineral Wells Police Department

212 S. Oak St.

**Inmate Booking Report** 9/26/2013

## Personal

Name: Davis, Johnny Eugene Sr          Agency Id: 5237-1

Ethnicity: Non-Hispanic    DOB  11/2/1969    Age: 43    POB:

Race:  White          Sex   Male      Weight: 150      Height: 5' 5"

Hair:  Brown         Eyes:  Hazel

Identifying Characteristics

| Characteristics | Body Parts | Description |
|---|---|---|

DL No.:          Issued:          SS No : 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  DPS No.:          FBI No.:

Occupation:                    Employer:

## Address
Street:                    City:          State:          Zip:

## Phone
Phone:                 Type:

Phone: (940)745-5723        Type: Cellular Phone

## Arrest
Arrest Agency: Mineral Wells Police Department      Booking Date:  09/23/2013 14:58
Arrest Officer:  Bilski, Christen            Booking Officer: Bilski, Christen
Arrest Location: 607 SW 4TH AVE                  Arrest Date:    9/23/2013 2:51:00 PM

## Vehicle
Make:          Model:          License No.:          Towed:

## Remarks:

**Charges**

Call No.:
1300012973

1    -- WARRANT CLASS B OR ABOVE

Remarks.  Injury to a Child

Total Amount:

NOTHING STATED ABOUT MIRANDA WARNINGS
NOTHING STATED ABOUT ASSISTING OFFICER

CAUSE NO. 15154

| STATE OF TEXAS | )( | IN THE DISTRICT COURT |
| | )( | |
| VS. | )( | PALO PINTO COUNTY, TEXAS |
| | )( | |
| JOHNNY EUGENE DAVIS, SR. | )( | 29th JUDICIAL DISTRICT |

## EXHIBIT LIST

STATE'S
No. 1- Guilty Plea Memorandum [in jacket]
No. 2- Mineral Wells PD Report
No. 3- Cook Children's Medical Records [in jacket]
DEFENDANT'S
(none)

*VIOLATION OF EXPARTE Y BARRA*
*FAILED to PRESENT EVIDENCE OF BEHALF*
*OF DEFENDANT*

*INeffective ASSISTANCE OF counsel*

I certify that the set out list above represents all exhibits received in evidence in the above-referenced cause in the Trial by Court on April 16, 2014. I hereby transmit referenced exhibits to the Clerk of this court.

Signed this **16th** day of **April**, 2014.

*EX PARTE BARFIELD 697 S.W. 2d 420 (TexCrim App. 1985)*
*INSUFFICIENT EVIDENCE*

_____
Elizabeth Bourquin, Official Court Reporter

_____
District Clerk's Office Representative

*PROSECUTING ATTORNEY RICHARD Ritchie*
*FAILED to PRESENT to court FINDINGS OF MENTAL*
*EVALUATION FAILED to present to CoMPES*
*VIOLATION OF FALSE PROMISE A*
*DID NOT STATE WHAT STATEMENT*
*WAS STATED AS " IF I DID*
*→ IF YOU Tell Me WHAT you DID I WILL Tell the*
*DA this WAS AN ACCIDENT over →*

FILED
AT 4:05 PM-AM
APR 16 2014
JANIE GLOVER, DISTRICT CLERK
PALO PINTO COUNTY TEXAS
BY _____ DEPUTY

STATEMENT WAS MADE AFTER VIOLATION
OF FALSE PROMISE ACT WHICH WAS VIOLATED
. when I Refused to continue with
INTERROGATION

Detective - "Set over Here."
me - No, my HIP HURTS
Detective - IF you tell me what you did
I will tell the DA THIS WAS AN Accid.
CHAPTER 8:45 "PROMISE THAT IS Positive"

three-year-old to do that; is that right?

A.   Yes, sir.

Q.   The child should be old enough now where you shouldn't be changing diapers anymore; is that right?

A.   Yes, sir.

Q.   And any kind of visits, either through CPS or whatever, you're willing -- if it has to be supervised or whatever, that's fine; is that correct?

A.   Yes, sir.

Q.   Any chance that you don't love your child and want to be back with him?

A.   No.

Q.   In fact, that night, you were watching a Ranger game, weren't you?

A.   Yes, sir.

Q.   And your wife was not doing anything bad, but she works; is that correct?

A.   No, sir.

Q.   She doesn't work?

A.   No, sir.

Q.   That night, she was sleeping because she gets up early, or what was the transition that night?

A.   She was at therapy group and a counselor for MHMR.

Q.   Okay.   She was at MHMR or whatever, but you

CAN VERIFY THERAPY WAS FRIDAY COURTS
STATING INCIDENT HAPPENED ON SATURDAY

But therapy session was on Friday can verify through Darline Davis of Miami

Arrest Narrative

Prisoner Name:   Davis, Johnny Eugene

Reasonable suspicion for vehicle stop or detention of prisoner

Warrants   Warrants were confirmed

Handcuffing:   Handcuffed in front (explain in notes)   ffs   were not (explain in notes)   from the prisoner before being placed
in a cell.

Prisoner   was             searched incident to arrest by          Bilski, Christen


Other searches:       None

Transporting officer:   Bilski, Christen

The transporting police unit       was                              inspected for weapons and contraband before and after
transporting prisoner.

Prisoner's seat position:       back passenger side

The prisoner was     not secured with a seatbelt (explain in notes)

Prisoner was allowed to talk to the following people while in custody (explain in notes if other than "none"):       friend

The prisoner   was not                              operating a motor vehicle. If the prisoner was operating a motor

vehicle, the prisoner's vehicle was

At the jail, the arresting officer's firearm was       secured in the jail lockbox

The prisoner   was             under observation during the entire time of arrest

Force:   No force used during this contact.If force was used, a Use of Force form is attached.

Notes

On Monday 09/23/2013 at 1445 hours I, Officer Bilski served  warrant # F01134 Injury to a Child to Johnny Davis W/M
DOB 11/02/1969 at 607 sw 4th ave Mineral Wells, Palo Pinto Texas. Johnny was sitting in living room and idenified
himself. I placed Johnny under arrest and transported him to Mineral Wells Police Department. Davis was booked in per
policy and procedure.

NO DOCUMENTATION VERIFYING MIRANDA RIGHTS BEING
READ BEFORE TRANSPORT TO JAIL NOTHING STATED ABO
ASSISTING OFFICER
WITNESS TO FAILURE OF MIRANDA WARNINGS AT TIM
OF ARREST AT RESIDENCE
DARLINE DAVIS

you may or may not attempt to do that; is that correct?

A. Yes, sir.

Q. Okay. The jail is actually giving you some medicine for diabetes and blood pressure, are they not?

A. Yes, sir.

Q. Let's talk about -- if the Judge considers probation in this case, can you -- can you be employed?

A. Yes, sir.

Q. Certainly, you can do minimum wage jobs; is that correct?

A. Yes, sir.

Q. Some of the jobs you've had in the past have been a food stocker, correct?

A. Yes, sir.

Q. And -- but he -- the Court can be confident that you can make minimum wage and pay any fees or fines or whatever; is that correct?

A. Yes, sir.

Q. And since you've been incarcerated for eight months, you've, obviously, got to start over, right?

A. Yes, sir.

Q. You can mow lawns and do that kind of thing.

A. Yes, sir.

Q. And that's what you want to do instead of go to

get the prescription to get the medicine to get this condition under control.

MS. MASSEY: I'll pass the witness.

REDIRECT EXAMINATION

BY MR. RITCHIE:

Q. And, Johnny, that's why, if you get placed on probation, you can get some anger management and some help; is that correct?

A. Yes, sir.

Q. Because you don't want anything bad to happen to your son. This has -- this has been very difficult on you, hasn't it?

A. Yes, sir.

MR. RITCHIE: I pass the witness, Your Honor.

MS. MASSEY: Your Honor, may I have a moment?

THE COURT: Yes. Can I have that exhibit, Exhibit 2?

(Pause in proceedings.)

THE COURT: Ms. Massey?

I'm sorry. I didn't -- is that all you have, Mr. Ritchie? Did you rest?

MR. RITCHIE: I had passed the witness, Your Honor.

were in charge of the child that night; is that correct?

A.   Yes, sir.

Q.   I mean, nothing unusual about that, was it?

A.   No, sir.

Q.   And are you telling the Judge that you'll do anything that it takes to make probation?

A.   Yes, sir.

Q.   You don't even have a driver's license, do you?

A.   No, sir.

Q.   But you've got people that will take you where you need to go; is that right?

A.   Yes, sir.

Q.   And you're aware that if the Judge puts you on probation and that you violate that, that you could go to prison for probably 10 years or however long he says, right?

A.   Yes, sir.

Q.   But you want to work your services; you want to do things with CPS; you want to cooperate with probation and not go to prison.

A.   Yes, sir.

Q.   Johnny, am I leaving out anything?

You know you have community service hours you'd have to do.

A.   Yes, sir.

Do you understand all of that?

A. Yes, ma'am.

Q. And you thoroughly believe that you can and will do all of that?

A. Yes, ma'am.

Q. Even though you don't have a car and a ride?

A. I'd find a ride with a friend of mine. I'll just have to -- you know...

Q. And if I told you that your wife didn't want you back in the house, would you be accepting of that, if she told you that?

A. It'd hurt, but I -- I want to be back with her. This was an accident. I didn't do this -- I want to stop any disability, stop and go back to work and learn how to be a better father and husband.

Q. Now, in the medical records that I introduced earlier, there's a statement from your wife that you had been diagnosed with an explosive personality?

A. Yes, ma'am.

Q. And that means that you're prone to anger and violence.

A. Yes, ma'am. But at the time, I was unaware what that meant.

Q. But you admit that you do have that?

A. Yes, ma'am. That's one reason I'm trying to

STATEMENTS FROM WITNESS HAVE BEEN DESIGNED TO CREATE the PERCEPTION THAT I WAS RESPONSIBLE FOR MY SON'S INJURY (VICTIM) WITHOUT ANY FACTUAL BASIS UNWARRANTED DEDUCTIONS AND HEARSAY

Eugenia _____
_____
_____ un
mily Drive
TX 78102

COURT OF APPEALS
Eleventh District of Texas
P.O. Box 271
EASTLAND TX 76448

SAN ANTONIO PSDC
THU 12 MAR 2015 PM

